537-07/PJG/ROSS/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
PHOENIX BULK CARRIERS LTD.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900
Facsimile: (212) 425-1901
Peter J. Gutowski (PG 2200)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PHOENIX BULK CARRIERS LTD.,

               Plaintiff,

    -against-

UNICARBON LIMITED and
DYNACOAL LIMITED,

               Defendants.
-----------------------------------------------------------x

**07 Civ. 10404 (RMB)**

**DECLARATION OF
EDWARD COLL IN OPPOSITION
TO MOTION TO VACATE**


EDWARD COLL, states as follows:

1.     I am the President of Phoenix Bulk US, a shipping company based in Rhode Island which acts as the agent for the Plaintiff, Phoenix Bulk Carriers Ltd., ("Phoenix") in this action.

2.     I have been asked by Freehill, Hogan & Mahar LLP to submit a Declaration in response to a motion to vacate Phoenix' attachment of a freight payment made in connection with the transportation of a certain cargo of coal carried from China to Turkey on the M/V BRIGHT ZHEJIANG.

3.     In this respect, and as outlined more fully below, on behalf of the Plaintiff, we commissioned and arranged for an investigation to be undertaken with respect to the Defendants

NYDOCS1/298218.1

in this case, the relationship they have with two coal-importing companies in Turkey, and the latter's use of so-called "offshore" entities based in the British Virgin Islands through which they conduct business.

4.    The results of this investigation and various documents which bear out these points are set forth below in this Declaration.

5.    This information was provided as a consequence of contact with various charter brokers located both in the United States and the UK, the international investigative services of Gray Page based in the UK and various other charter and shipping sources, contacts we have with owning entities whose vessels have been chartered by these defendants and other sources.

6.    As discussed below, the evidence reveals that the transfer of freight which was attached (and which Mr. Mizracki seeks to release) in fact, represents the payment of a debt for the benefit of the defendant Dynacoal who is the receiver and consignee under the bill of lading.

7.    Mr. Mizracki carefully avoids any mention of this in his Declaration, no doubt hoping that the Plaintiff would not be able to locate and place before the Court the relevant bill of lading, which is annexed hereto as Exhibit H and which is discussed in greater detail below.

**General Corporate Structure of Defendants, their Parents and Global Coal.**

8.    The two Defendants, Dynacoal and Unicarbon, are shell corporations formed in the British Virgin Islands, who were essentially used as chartering entities for the purpose of importing shipments of coal into Turkey by two large coal importers (described below) both of which are owned/controlled by Mr. Ayhan Mizracki ("Mr. Mizracki").[1]

9.    Unicarbon was originally registered in the British Virgin Islands on November 7, 2002 under Registration No. 520059, and although its corporate registration papers there identify

---

[1] Not surprisingly, Mr. Mizracki is the "director" who signed the declaration for Global Coal, the one making the motion.

an office in Road Town, Tortola, investigations at Tortola reveal that there is no actual office there whatsoever for Unicarbon, no employees, no presence, etc.

10.    In similar fashion, the other Defendant Dynacoal was also formed in the British Virgin Islands on September 23, 2005 under Registration No. 677723.

11.    Its registration documents in the BVI corporate registry again purport to reflect an office at Road Town, Tortola, but investigation reveals that it has no actual office there whatsoever either.

12.    This is typical in the context of off-shore shell companies.

13.    At the risk of jumping ahead, the party that has now appeared in this action claiming to have its funds innocently captured, "Global Coal Trade Co. Ltd." (Global Coal") is similarly a BVI creation which was originally formed on April 30, 2004 under Company No. 594596.

14.    Once again, the records at the BVI registry reflect an office in Road Town, Tortola, but again, no actual business presence by Global Coal is maintained there, or anywhere, as far as we can tell, apart form that done by Mr. Mizracki from his offices in Turkey.

15.    The records in the BVI registry also show that this "company" (Global Coal), and I use that term loosely, was permitted to lapse and then, curiously, resurrected just last year when Mr. Mizracki, or persons acting at his behest, arranged for it to be "re-registered".

16.    Moving forward, and as briefly noted above, our investigation has confirmed that the two defendant shell entities (Unicarbon and Dynacoal) are utilized by Mr. Mizracki as the entities in whose name he buys and imports the coal for his two Turkish coal importing companies.

17.    Mr. Mizracki owns/controls several large coal importing companies based in Turkey.

18.    The lead company is called Enerji Maden Urunleri Sanayi ve Ticaret A.S. ("Enerji Maden"), and under this entity, he operates separate entities with similar names including Super Karbon Enerji Madencilik San. Ve Tic. Ve. (which I will refer to as "Super Karbon"), and Super Enerji Madencilik ("Super Enerji Maden").

19.    In order to meet their coal importing needs both for production and sale in Turkey, Mr. Mizracki enters into long term supply agreements with suppliers in China, primarily, a large supplier based in Qinhuangdao, which is called China National Coal Industry Qinhuangdao Import and Export Co. (For ease of reference, I will refer to them as "CNCIQ".)

20.    Of course, he does not do so in the names of the *brick and mortar* Turkish entities with an established presence in Turkey (i.e. the Enerji Maden companies noted above), but does so in his BVI shell entities including the two defendants Unicarbon and Dynacoal.

21.    Returning to these supply contracts, CNCIQ is a well-known exporter of coal in China and inquiries with them, and through brokers, have confirmed that Unicarbon and subsequently Dynacoal each have been the names utilized in long-term supply contracts for the sale and shipment of large quantities of coal, in bulk, to Mr. Mizracki (and his "Enerji Maden" Turkish entities).

22.    Most recently, it was confirmed through brokers that Dynacoal has an ongoing agreement (understood to be annual) with CNCIQ for the sale and export of shipments at a rate of about 1 - 2 cargoes per month in "Panamax" size vessels. See **Exhibit A.** This information was provided by Dynacoal's (Mr. Mizracki's) Turkish brokers, identified in greater detail below.

23.     A Panamax vessel refers to a standard bulk carrier which can transport approximately 75,000 M/T of a bulk cargo, like coal.

24.     The shipments of coal purchased and carried under the Dynacoal and Unicarbon name are transported and discharged in Turkey for use and disposition by Enerji Maden, including Super Enerji Maden and/or Super Karbon.

25.     All of these entities are operated from the same business locations, principally from the same office in Istanbul, Turkey located at:

> Buyukdere Cad
> Akabe Is Merkaezi No: 78-80 Kat.40
> Mecidiyekoi -- Istanbul, Turkey

26.     It is here that one will find Mr. Mizracki, certainly not at the illusory office in the BVIs.

27.     These same entities also utilize the same broker, Aksoy Denizcilik Tasimacilik, which also operates from an office in Istanbul and is primarily involved in the booking of vessels for the transportation of the coal from China into Turkey for the group.

28.     As noted above, the group is controlled by Mr. Mizracki.

29.     With respect to Enerji Maden, he is the controlling shareholder, holding 89.5% of the shares.

30.     He is the chairman of the board of directors, along with Ece Mizracki, who serves as vice-chairman.

31.     Mr. Mizracki also holds an equal controlling share interest in Super Karbon.

32.     He is identified as the vice-chairman of that Turkish corporation.

33.    Mr. Mizracki, as we now know from the Declaration just filed in this action, is "the director" (presumably the only director), of Global Coal, which, by all accounts, appears to be the latest BVI incarnation, which is being used to supplant Dynacoal. (More on this below.)

**How this Whole Operation Works, and Why the Funds Under Restraint are Funds in which the Defendants have an Interest.**

34.    As outlined above, Dynacoal and Unicarbon are the "chartering arms" under which Enerji Maden, Super Karbon, Super Enerji, etc, purchase and transport their coal from China into Turkey.

35.    Long term supply contracts are entered into with a supplier like CNCIQ and then Mr. Mizracki utilizes one of his BVI offshore shell entities to serve as the nominal buyers of the coal and the charterers of the vessels to bring the coal to Turkey.[2]

36.    By way of illustration, and to outline for the Court how these charter trades are performed, when a shipment of coal is about to be made, and as noted above, Mr. Mizracki generally runs about two shipments a month into Turkey, his broker Askoy Denizcilik, puts out into the charter market an email (which is sometimes referred to as "an indication") identifying the general nature of the shipment on which they would like the owners of vessels to quote or bid.

37.    For illustration purposes, attached to this Declaration as **Exhibit B** is one of these indications which was put out by this group's broker in September 2007 identifying one of the monthly shipments it had coming out of CNCIQ in China under the supply contract which Mr. Mizracki put in the name of Dynacoal.

---

[2] By all accounts, and as detailed briefly above, in the wake of the attachment, Mr. Mizracki has now revitalized another of his BVI shell entities, Global Coal, in order to avoid the attachment but I do not want to get ahead of myself.

38.     As is evident, the indication generally describes the amount of the cargo, the dates for the shipment and the identity of the charterer Dynacoal.

39.     In this situation, we see Dynacoal as the charterer, an indication of the approximate amount of cargo (50-70,000 M/T of coal), this time coming from CNCIQ's facility at Haunghua and going to "1-2 Turkey" (i.e. one or two discharge ports in Turkey).

40.     That same indication also reflects the fact that the group was still looking for another vessel for a lifting from CNCIQ'S facility at Qinhuangdao, and again Dynacoal was going to be the charterer. See language at bottom of Exhibit B.

41.     A similar charter inquiry is found at **Exhibit C**.

42.     Here, the charterer (or "ACCT", meaning the name of the entity they would use as charterer) for which the quote was being solicited, was again "Dynacoal" of BVI, and this indication then goes on to reflect one port in "N China (North China) and 1-2 discharge ports "Turkey" with the cargo to be ready on or about "25 August onward".

43.     This type of an indication (Exhibit B and C) are the initial starting points in what will then turn out to be an eventual charter party or "fixture", the specifics of which will be negotiated between the brokers. See also **Exhibit D,** another indication for a Dynacoal cargo from China.

44.     For the past several years, Mr. Mizracki has named Dynacoal as charterer is because that is the same corporate shell he has been inserting into the supply contract with CNCIQ. See Exhibit A and his broker's confirmation that Dynacoal has the supply contract with CNICQ and are their "usual" shippers.

45.     The shipments of coal from CNCIQ under the "Dynacoal" long term supply contract include terms which provide for FOB delivery.

46.    In other words, CNCIQ only need to place the coal on the dock for loading in China, but it is Dynacoal, as the buyer, that needs to go out and charter the ship in order to arrange for the transportation.

47.    As such, Dynacoal is also identified as the receiver and consignee under the bill of lading, it also has the obligation to pay the freight to the owner of the vessel that is being chartered.

48.    When an indication is sent out in the market looking for a vessel, owners sometimes ask for some background information about the charterer.  In connection with an indication sent out this year for a vessel, the group's broker Aksoy sent out the information referred to above and identified in Exhibit A.

49.    Here, Aksoy confirmed the background and relationship the two defendant chartering entities (Dynacoal and Unicarbon) play in the importation of the coal for the "Group" of Turkish coal importers.

50.    As appears in the message, Aksoy confirmed Dynacoal's supply agreement with CNCIQ, their regular trade from China, the volume of business they have been doing of late, their relationship with Unicarbon in the same "group" (i.e. the Enerji Maden) and the numerous other vessels that they had fixed (chartered) in '07 and '06 in this manner.

51.    Moving forward with my discussion of the way this business is done, when an owner responds to an indication like the ones identified above, the brokers then negotiate the terms of the charter and eventually those terms are memorialize in what is called a "fixture recap".

52.    Following that, the vessel will then steam to loadport, tender its notice of readiness, load the cargo and a bill of lading will be issued for that cargo.

53.    By way of further illustration, in late July 2007, Dynacoal went out with another indication for a shipment that it had scheduled to lift from CNCIQ in early August.

54.    That indication eventually resulted in their charter of the vessel SWIFT FLAME under a charter party dated July 27, 2007 with the vessel's operator Industrial Carriers, and that vessel proceeded to CNCIQ's facility at Qinhuangdao to load the cargo.

55.    Under that contract, 66,232 M/T of coal was loaded on the SWIFT FLAME and then a bill of lading was issued, a copy of which is attached as **Exhibit E**.

56.    As is evident from Exhibit E, and pursuant to Dynacoal's position as buyer under the long-term supply agreement between Dynacoal and CNCIQ, Dynacoal was listed as the consignee (the nominal receiver of the cargo), the charter party dated August 27, 2007 is identified in the box in the lower left hand side of the bill of lading and the loadport in China and the discharge port in Turkey are identified.

57.    In addition, the Court will note that Super Enerji is identified as the "notify address" because Dynacoal, the BVI shell corporation, does not have any real office in Turkey (nor in the BVI's as indicated above) and since Dynacoal is really the chartering arm for this Enerji Maden and Super Enerji group, the real parties behind the scene who are importing the coal are set forth as the "Notify Address", along with Mr. Mizracki's office address in Istanbul, so that the ship owner knows where there is an actual address to provide proper notice when the vessel arrives.

58.    Another example of this system of purchase and shipment is found in a similar bill of lading issued for another shipment on a vessel chartered by Dynacoal for carriage of coal purchased by it under its supply contract with CNCIQ is reflected in **Exhibit F**.

59.     In Exhibit F, we again see the supplier CNCIQ identified as the shipper at the top, as they are the entity supplying the coal loaded under the long-term supply agreement between CNCIQ and Dynacoal.

60.     In this shipment, Dynacoal had chartered the PIONEER SKY, and the freight due for the shipment from Dynacoal for the ocean carriage of the coal to it as receiver and consignee was to be paid under that October 10, 2007 charter to the owners of the PIONEER SKY.

61.     Once again, and even though Dynacoal was identified as the nominal consignee, Super Enerji Maden (Mr. Mizracki's Turkish coal distributor) appears as the notify party because Dynacoal has no real presence in Turkey for the reasons discussed above.

**The Subject Transaction**

62.     In conformity with the shipping and chartering practice outlined above, in December 2007, the Group's broker Aksoy went out with another indication looking for a vessel for a shipment under the supply contract with CNCIQ to be lifted (loaded) in late December 2007.

63.     Through brokers, we were able to secure a copy of that indication, which is **Exhibit G.**

64.     As is plain from that exhibit, this reflected a request, through Turkish brokers, for a charter by Dynacoal (identified in the indication as "A/C [account of] Dynacoal Ltd.") for a lifting of coal at one of the CNCIQ facilities in China with discharge ports in Turkey.

65.     This indication was initially released to the market on December 6-7.

66.     When no firm fixture (charter of a ship) was obtained, it was placed out again in the market on December 12.

67.     We have obtained a copy of this reiteration of the indication and I quote it verbatim as follows:

> Qte
>
> A/C DYNACOAL
> 1 HUANGHUA/1-2 TURKEY (INT.MARMARA)
> 50/65,000 MT COAL ABT 47'
> LAYCAN 20/30 DEC
> 15000C/10000C
> 2.5 PCT ADC 5PCT TTL
> SUBS FORMALITIY

68.     In the wake of the December 12 reiteration of Dynacoal's need for this vessel, negotiations were then initiated by the brokers for the owners of the BRIGHT ZHEJIANG, the vessel which generated the freight which has been attached in this action.

69.     The BRIGHT ZHEJIANG is a bulk carrier of a size which was suited for the lifting of the cargo identified in Dynacoal's indication above.

70.     For the Court's guidance, I also call attention to the fact that within the indication quoted above in paragraph 67, there is a reference to

Laycan 20/30 Dec

71.     This is a maritime term which refers to laydays canceling, or the "window" within which this cargo will be ready and correspondingly the window within which the vessel needs to present and load.

72.     A charter party was eventually booked for this shipment and the BRIGHT ZHEJIANG made her way to the loadport to lift the cargo from CNCIQ.

73.     The vessel arrived and loading was completed on or about December 22, 2007 within the "laycan" date indicated in Dynacoal's initial indication.

74.     She lifted a total of 63,015 M/T of coal for discharge in Turkey.

75.    In the presentation submitted by Mr. Mizracki, (see Mizracki Declaration in Support of Motion to Vacate) he identifies Global Coal as being the charterer that he inserted for that lifting.

76.    This obviously conflicts with the original indications which identified his usual chartering entity Dynacoal as the charterer, and thus begs the question of what happened to trigger that switch because obviously, the supply contract remains in Dynacoal's name or Dynacoal would not have been identified in the original charter indications sent out on December 6 and 12, see Exhibit G and paragraph 67 above.

77.    I would respectfully submit to the Court that the answer is simple and can be traced to the fact that this Court had previously issued an order of attachment in late November and as a consequence of the restraint of a modest sum in early December (which then resulted in our counsel being obliged to place Mr. Mizracki on notice of the restraint in New York) he then hastily substituted the identity of the charter by utilizing his recently reactivated one of this other BVI shell entities (Global Coal) as the nominal charterer to avoid the payment of freight due under that shipment being captured in New York.

78.    However, as the supply contract is with Dynacoal, it was more difficult for him to recast the bill of lading issued in connection with the shipment, a copy of which we have managed to secure and which illustrates and identifies of the true parties to the transaction and a copy of that is attached as **Exhibit H**.

79.    Here, the true story is revealed because it again identifies Dynacoal as the receiver and consignee of the coal, just like all the other situations, Super Enerji Maden as the notify party and does not reference Global Coal at all.

80.     It similarly identifies CNCIQ as the shipper under the long term sales contract and, as before, since the shipment is FOB, the freight which is due from Dynacoal as the receiver, was to be paid to the owner of the BRIGHT ZHEJIANG as per the terms of the charter party which was initially identified as being a fixture (charter) for Dynacoal in the recap set forth above.

81.     As the receiver and consignee under the bill of lading, Dynacoal had the obligation to pay the freight to the owner of the BRIGHT ZHEJIANG in exchange for the ocean carriage performed by that vessel in transporting the cargo to Turkey and of course Mr. Mizracki's business office address is provided on the bill of lading because his BVI shell entities have no address.

82.     When Mr. Mizracki became aware of the fact that an attachment was pending in New York (by virtue of the fact that Plaintiff had frozen a small sum in early December), he obviously knew that if another payment was made by Dynacoal to the owner of the BRIGHT ZHEJIANG it would be frozen.

83.     Nevertheless, he needed to make that payment in order to satisfy the freight obligation to the owner of the BRIGHT ZHEJIANG so he hastily substituted one of his other BVI shell companies (Global Coal) which was only recently reactivated in 2007, and then reshuffled the identity of the charterer so as to mask the fact that the payment was being made for the benefit of and to extinguish Dynacoal's freight debt.

84.     But what he could not avoid, and what he presumably thought we would never find, was the bill of lading which identified the true parties to the deal.

85.     Similarly, what Mr. Mizracki could not undo was the underlying obligation for the payment of the freight, which was a debt owed by Dynacoal, the consignee and the buyer of the coal from CNCIQ, to the ship owner.

86.     For the Court's guidance, it was this information which we provided to the Court and which formed the basis of the application we made in late December under which we confirmed that a shipment which was being booked for the benefit of Dynacoal as buyer, the original charterer and consignee, was going to be lifted on the BRIGHT ZHEJIANG and why the freight payment would be made for the benefit of Dynacoal which was going to be masked so as to avoid payment.  In this respect, brokers had indeed confirmed that the BRIGHT ZHEJIANG had in fact, picked up the Dynacoal cargo.  See **Exhibit I.**

87.     It was upon this basis that the Court issued the amended Order, identifying this freight payment involving the BRIGHT ZHEJIANG as representing the payment in which Dynacoal had an interest and would therefore be subject to seizure.

88.     As we correctly anticipated, Mr. Mizracki did indeed switch the identity of the charterer from that which originally appeared in the indication in early December to his alternative BVI entity Global Coal but that transfer was captured because the identity of the vessel had been learned and was identified in the revised attachment.

89.     To the extent the payment of the freight represents satisfaction of a debt owed by Dynacoal under the bill of lading (Exhibit G), the payment properly represents funds in which Dynacoal has an interest.

90.     Not unsurprisingly, Mr. Mizracki makes no mention of any of these facts in his plain "vanilla" presentation of a poor, disinterested charterer whose innocent freight payment was wrongfully captured.

91.     He is the controlling individual of all these companies, the vessel was chartered for the benefit of his BVI shell Dynacoal, he manipulated the identity of the charterer to circumvent the order issued in this case, and his submission is purposefully misleading.

92.     He purposely failed to identify the bill of lading in his submission to the Court, failed to identify the receiver as Dynacoal, failed to identify his company Super Enerji Maden as the notify party, and the fact that the freight was being paid to satisfy Dynacoal's obligation to the owners under the bill of lading.

93.     Instead, he stands before the Court as a simple charterer with no supposed relationship to the claim or the parties at interest in the claim, but rather a director of a BVI company, who happens to be signing his declaration in Istanbul. See last page of Mizracki Declaration.

94.     Of equal import is the fact that Mr. Mizracki failed to put any of the charter negotiation e-mail exchanges leading up to the fixture because they would have disclosed that Dynacoal was the nominated and contemplated charterer.

95.     I appreciate that the purpose of a declaration is not to argue the case and I will leave that to our counsel to do so but I would respectfully submit having been in this business for more than 25 years, Mr. Mizracki's submission to the Court is a subterfuge, does not provide the Court with the full story, fails to disclose his interest in all these companies and is designed to mislead the Court into the false impression that his BVI shell Global Coal should have its funds released.

96.     This is a transaction involving a purchase by Dynacoal, the Defendant. The obligation to pay the freight in this FOB shipment is Dynacoal's, under both the purchase agreement and the bill of lading, and the substitution of Global Coal, another BVI shell, at the

eleventh hour is a subterfuge designed to circumvent the order of attachment which should not be permitted because the payment is still satisfying Dynacoal's freight debt under the bill of lading and therefore, represents money in which it has an interest.

97.    I thank the Court for its attention and review of my comments.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

                                                    Edward Coll

# EXHIBIT A

**Ed Coll**

From:         Claudio Ceccarelli [panamax@ifchor.ch]
Sent:          Tuesday, August 14, 2007 6:42 AM
To:            Chartering
Subject:      Doc-No. 4167864

Doc-No. 4167864  14/AUG/2007  12:38 h  CC

ED/CC

YSTWITH

GOT FOLL


Thks yrs and sorry for late reply.chrts counter as fllws for reply w/i 30 mins:-

Pls adv
Ows/managers full stye

Bss a/e
- sf abt 47'
- l/p : as per chrts last
- pls adv laycan
- frt usd 41.50 pmt bss marmara or hemrut
     usd 40.50 pmt bss iskenderun
- ryrting on combo ? (pls explain)
- 95 pct payable w/i 5 bdays after s/r bs/l , remain as per chrts last
- nor cls: chrts last (sorry cannot be changed due to being coa terms)
- ohabe : imperative (that is regular biz more than 5 years and evertime
   chrts agent to use for smooth operation w/o any problem/complaint fm ows) e n d


DYNACOAL LIMITED, BVI



Messrs Dynacoal Limitedhave an agreement with China National Coal Industry Qinhuángdao Import/Export Co Ltd.

They are usual shippers in our china biz/coa.



15 (or so) vsls hs been fixed by same Group during 2003 (as unicarbon in same group).

Their annual capacity abt 1.7/2 millon tonnes fm china only.

They hv regular b.sea biz in coaster size as well.


last few fixtures

  -mv bonnie smithcwick-cp dd 20/06/07
  -mv rip hudner-TTMI- cp dd 06/06/07
  -Mv arabella-seabream-cp dd 21/05/07
  -mv oceanic breeze - mayflower-cp dd 15/03/07
  -navios gemini s-cosco- cp dd 28/12/06
  - mv stefania--glencora-cp dd 04.08.2006
  - tai prize-glencore - cp dd 04/08/06
  - mv taskent-deniz nakliyat-cp dd 08.06.2006
  - mv cemtex venture-glencore-cp dd 31/07/06
-mv selecta -viktoria marin- cp dd 02.02.06
-mv golden glow-Golden glow steamship-cp dd 05/02/06
- mv sinotreasure - Sinotreasure Shipping Limited/ cp dd 05/01/06 -mv red rose - seven mountain shipping/ cp dd 24/10/05 -mv kavo delfini-/seven mountain shipping / cp dd 21/10/05 -mv dimitris perrotis / seven mountain shipping / cp dd 14/09/05 -mv ocean pearl / seven mountain shipping / cp dd 02/05/05

rgds

-----Original Message-----

# EXHIBIT B

```
-----Original Message-----
From: Figen TULAY [mailto:figen@aksoyshipping.com]
Sent: Friday, September 28, 2007 10:38 AM
To: Figen TULAY
Subject:
```

Fm aksoy shpg/istanbul 
Tel +90 216 445 50 95
Fax +90 216 445 50 94
Email figen@aksoyshipping.com
msn figensandal@hotmail.com
web www.aksoyshipping.com <http://www.aksoyshipping.com/>

our usual chrts fresh open,

dynacoal ltd
50/70.000 mt coal abt
huanghua/1-2 turkey
20/30 oct
15000c/10000c
1.25 pct ttl

huanghua 229 m loa

still hv,

dynacoal ltd

jing tang gang a/o qinhuangdao/1-2 turkey 50/70.000 mt coal abt 47 ppt 15000c/10000c
1.25 pct ttl

rgds/figen

+++

# EXHIBIT C

**Ed Coll**

| | |
|---|---|
| **From:** | Claudio Ceccarelli [panamax@ifchor.ch] |
| **Sent:** | Thursday, August 09, 2007 6:41 AM |
| **To:** | Chartering |
| **Subject:** | Doc-No. 4156307 |

Doc-No. 4156307  9/AUG/2007  12:41 h  CC

YSTWITH

HAD ANOTHER GO

CAN TRY AS FOLLOWS

ACCT DYNACOAL OF BVI
1 n.china (INTN JINGTANG OR XINGANG)/1-2 turkey (out of iskenderun ,nemrut,marmara – max 2
ports) NO DRAFT RESTRICTIONS upto fcc coal abt 47
25 AUG ONWARD
15000c/10000c
IDEAS:
USD 40 BSS DILISKILESI(MARMARA)
USD 39 BSS ISLENDERUN
IF 2 DISPORT USD 1 ON THE TOP OF HIGHEST RATE vsls dts
2.5 pct PST US

********************************************************
IFCHOR GROUP SA, Place Pépinet 1, 1003 Lausanne, Switzerland as brokers only

capes@ifchor.ch - panamax@ifchor.ch - handy@ifchor.ch securities@ifchor.ch -
operations@ifchor.ch - capesops@ifchor.ch
            www.ifchor.com

Phone: +41 21 310.31.31 - Fax: +41 21 310.31.00/01
  Tlx: 450 351 IFC CH - 450 352 IFOPS CH

********************************************************

1

# EXHIBIT D

-----Original Message-----

YSTWITH

COAL TO TURKEY

PLS ASK OWNS TO OFFER BASIS FOLL TERMS:

-A/C : DYNACOAL LTD, B.V.I 

-OWS : PLS ADV

-OWS HV TO PROVICE "NOC (NO OBJECTION CERTIFICATE) " FM HEADOWS FOR FRT/DEMM PAYMENT

 IF VSL UNDER T/C OR MANAGEMENT

-.....MT 5 PCT MOLOO COAL IN BULK STOWING ABOUT 47'.

-LOADPT : 1 N.CHINA (OUT OF JING TANG GANG ,XINGANG, HUANGHUA,QINHUANGDAO)

2

# EXHIBIT E

OCT-10-2007 08:34 FROM:                                                    P:3

CODE NAME: CONGENBILL EDITION 1994
Shipper

CHINA NATIONAL COAL INDUSTRY QINHUANGDAO
IMP. AND EXP. CO., LTD.252 MINZU ROAD QINHUANGDAO CHINA

**BILL OF LADING**
TO BE USED WITH CHARTER–PARTIES
Reference No.

B/L No.

1

Consignee

DYNACOAL LIMITED

CARRIER:
INDUSTRIAL CARRIERS INC

Notify address

SUPER ENERJI MAD.INS.SAN.VE TIC.A.S.
BUYUKDERE CAD.AKABE IS MRK.NO:78-80 KAT 4
MECIDIYEKOY-ISTANBUL/TURKEY

| Vessel | Port of loading |
|--------|-----------------|
| SWIFT FAME | QINHUANGDAO,CHINA |

Port of discharge
DILISKELESI OR DERINCE,TURKEY

Shipper's description of goods                          Gross weight

COPY

N/M IN BULK       DATONG SIZED STEAM COAL
                  TOTAL NET WEIGHT:66232MT
                  SAY SIXTY SIX THOUSAND TWO HUNDRED AND THIRTY TWO
                  METRIC TONS ONLY


                  CLEAN ON BOARD
                  C/P NO:070727-01


NON-NEGOTIABLE

(of which              on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER – PARTY dated 7.07.2007
TO INDUSTRIAL CARRIERS INC

FREIGHT ADVANCE.
Received on account of freight:

Time used for loading.........................days ......................hours.

SHIPPED at the Port of Loading in apparent good order and
condition on board the Vessel for carriage to the Port of
Discharge or so near thereto as she may safely get the goods specified
above.
Weight , measure , quality , quantity , condition , contents and value
unknown.
IN WITNESS whereof the Master or Agent of the said Vessel has signed
the number of Bills of Lading indicated below all of this tenor and date,
any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|--------------------|--------------------------|
| | QINHUANGDAO AUG 7,,2007 |
| Number of original Bs/L | 秦皇島外轮代理有限公司 |
| THREE(3) | SIGNED AS AGENT FOR AND ON BEHALF OF THE MASTER VASYLYEV OLEKSANDR |
| | AS AGENTS |

Printed and sold by
Witherby & Company Limited, 32/36 Aylesbury Street,
London EC1R 0ET.
Tel. No. 0171 251 5341 Fax No. 0171 251 1296
by authority of The Baltic and International Maritime Council,
(BIMCO) Copenhagen.

# EXHIBIT F

P:1

CODE NAME: "CONGENBILL". EDITION 1994

Page 2

**BILL OF LADING**
TO BE USED WITH CHARTER - PARTIES

B/L No.

**1**

Shipper

CHINA NATIONAL COAL INDUSTRY QINHUANGDAO
IMP. AND EXP. CO., LTD.252 MINZU ROAD QINHUANGDAO CHINA

Reference No.

Consignee

**DYNACOAL LIMITED**

Notify address

SUPER ENERJI MAD.INS.SAN.VE TIC.A.S.
BUYUKDERE CAD.AKABE IS MRK.NO:78-80 KAT 4
MECIDIYEKOY-ISTANBUL/TURKEY

| Vessel | Port of loading | |
|---|---|---|
| PIONEER SKY | QINHUANGDAO,CHINA | |

Port of discharge
ISKENDERUN AND/OR NEMRUT BAY,TURKEY

*ORIGINAL*

Shipper's description of goods

Gross weight

N/M IN BULK       DATONG SIZED STEAM COAL
                  TOTAL NET WEIGHT:30635MT
                  SAY THIRTY THOUSAND SIX HUNDRED AND THIRTY FIVE
                  METRIC TONS ONLY

                  SHIPPER'S WEIGHT
                  FREIGHT PAYABLE AS PER CHARTER PARTY

(of which          on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER - PARTY dated ........10.10.2007...........

FREIGHT ADVANCE.
Received on account of freights:

.....................................................................

Time used for loading , ...................days ...................hours.

**SHIPPED** at the Port of Loading in apparent good order and
condition on board the Vessel for carriage to the Port of
Discharge or so near thereto as she may safely get the goods specified
above.
Weight , measure , quality , quantity , condition , contents and value
unknown..
IN WITNESS whereof the Master or Agent of the said Vessel has signed
the number of Bills of Lading indicated below all of this tenor and date,
any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue
QINHUANGDAO    OCT 24.,2007 |
|---|---|
| Number of original Bs/L
THREE(3) | Signature
SIGNED AS AGENT FOR AND ON
BEHALF OF THE MASTER
KOVALEVSKOY SERGIY |

C.15   Printed and sold by
       Witherby & Company Limited ,32/36 Aylesbury Street,
       London EC1R 0ET,

# EXHIBIT G

Date: Thu, 6 Dec 2007 13:53:33 +0200

FM KOZA CHART ISTANBUL

RE DYNACOAL
chrts full terms as follows :
++
-A/C : DYNACOAL LTD/BVI-UK

-OWNS : PLS ADVISE
   OWS HAVE TO PROVIDE NOC (NO OBJECTION CERTIFICATE FOR FRT/DEMM PAYMENT)
   FROM HEADOWS IF VSL UNDER T/C OR MANAGEMENT
- --------- MT 5 PCT MOLOO COAL IN BULK STOWING ABOUT 47 -LOADPT : 1 SB XINGANG OR
JINTANGGANG OR QINHUANGDAI IN CHOPT -OWS TO CHECK AND SATISFY THEMSELVES
REGARDING PORT RESTRICTIONS AT L/P -DISPT : 1 SBP SEA OF MARMARA AND/OR 1 SB
NEMRUT AND/OR ISKENDERUN -LAYCAN : 18/23 DEC 2007 (PLS ADV VSLS ITINERARY) -LOAD
RATE :15.000 MT PWWD OF 24 CONSEC HRS SHINC -DISC RATE :15.000 MT PWWD OF 24 CONSEC
HRS SHINC BSS ISKENDERUN
      10.000 MT PWWD OF 24 CONSEC HRS SHINC BSS MARMARA OR NEMRUT -LAYTIME FOR
LOADING SHALL COMMENCE 24 HRS AFTER NOR TENDERED UNLESS LOADING HAS
COMMENCED EARLIER IN WHICH CASE ACTUAL TIME USED TO COUNT.


-18 HRS T/TIME AT D/PORT (OR TO BE SHARED 50/50 % IF 2 D/PS TO BE
USED) UNLESS SOONER COMMENCED
-FRT : USD ----- PMT FIO GRAB TRIMMING ONLY BSS 1/1 ISKENDERUN DISCH
     USD ----PMT FIO GRAB TRIMMING ONLY BSS 1/1 MARMARA OR NEMRUT
     EXTRA USD 0.50 PMT FIO ON ENTIRE QTTY FOR 2ND D/P
-95 PCT PAYABLE W/I 5 BDAYS ACOL AND S/R BS/L WHICH TO BE PAID "FRT PAYABLE AS PER
C/P DD.. TO OWS" AND "CLEAN ON BOARD"
-FREIGHT DEEMED EARNED ON CARGO BEING LOADED DISCPOUNTLESS AND NON-
RETURNABLE VESSEL AND/OR CARGO LOST OR NOT LOST.
-NOR TO BE TENDERED W/W/W/W FM 8 AM TO 5 PM FM MONDAY TO FRIDAY AND FM
8 AM TO 12 NOON ON SATURDAY AT L/P,
   W/I 8/17 HRS SHINC AT D/P(S)
-DEMURRAGE USD ------- PDPR/HDWTS BE
-BALANCE FRT TO BE SETTLED TOGETHER WITH DEM/DES W/I 30 DAYS AFTER COMPLETION OF
DISCH -ANY TAX/DUES/WHARFAGES ON CARGO TO BE FOR CHARTERER'S ACCOUNT.
ANY TAX/DUES/WHARFAGES ON VESSEL/FREIGHT TO BE FOR OWNER'S ACCOUNT -
CHARTERER'S AGENT BE - OFFICAL TARIFF TO APPLY FOR PORT DISB -2.50 PCT TTL HERE ON
F/D/D -OWISE CHRTS PROF GENCON C/P -SUB STEM,SHIPERS AND RECEIVERS APPRVL TO BE
LIFTED WI 24 HRS AFTER AGREED ON MAINTERMS END
++
BRGDS


Unqte

# EXHIBIT H

DEC-12-2007 17:05  FROM:                                                    P:1

CODE NAME: "CONGENBILL". EDITION 1994
shipper

**BILL OF LADING**                                    B/L No.
TO BE USED WITH CHARTER – PARTIES
                                      Reference No              1

CHINA NATIONAL COAL INDUSTRY QINHUANGDAO
IMP. AND EXP. CO., LTD.252 MINZU ROAD QINHUANGDAO CHINA

Consignee

DYNACOAL LIMITED

Notify address

SUPER ENERJI MAD.INS.SAN.VE TIC.A.S.
BUYUKDERE CAD.AKABE IS MRK.NO:78-80 KAT 4
MECIDIYEKOY-ISTANBUL/TURKEY

| Vessel | Port of loading |
|--------|-----------------|
| BRIGHT ZHEJIANG | QINHUANGDAO,CHINA |

Port of discharge
MAIN PORT(S) OF TURKEY

**COPY**

Shipper's description of goods                         Gross weight

N/M IN BULK        DATONG SIZED STEAM COAL
                   TOTAL NET WEIGHT:63015MTMT
                   SAY SIXTY THREE THOUSAND AND FIFTEEN METRIC TONS ONLY



CLEAN ON BOARD
FREIGHT PAYABLE AS PER CHARTER PARTY

**NON-NEGOTIABLE**
(of which                    on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per

CHARTER – PARTY dated ....................................

FREIGHT ADVANCE.
Received on account of freight:

....................................................................

Time used for loading.................days .................hours.

SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.
Weight , measure , quality , quantity , condition , contents and value unknown.
IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|--------------------|-------------------------|
|                    | QINHUANGDAO   DEC 22, 2007 |
| Number of original Bs/L | 秦皇岛外轮代理有限公司 |
|                    | CHINA OCEAN SHIPPING AGENCY QINHUANGDAO |
| THREE(3)           | SIGNED AS AGENT FOR AND ON |
|                    | BEHALF OF THE MASTER |
|                    | KONG SHIBO |

C.15  Printed and sold by
Witherby & Company Limited, 32/36 Aylesbury Street,
London EC1R 0GT,

# EXHIBIT I

-----Original Message-----
From: Julian Morgan [mailto:hrs.pmx@howerobinson.com]
Sent: Thursday, December 13, 2007 9:40 AM
To: Chartering
Subject: DYNACOAL

HOWE ROBINSON SHIPBROKERS - Panamax Dept.

E-mail: hrs.pmx@howerobinson.com
JNM44896861  13/12/2007  14:39:33

Ed / Julian

BRIGHT ZHEJIANG    83 67,368  BC      BORYUNG      17-18DEC
COVERED THE DYNACOAL N.CHINA/TURKEY COAL STEM AT $52 PMT

I BELIEVE THEY STILL HV ANOTHER STEM THAT WUD SUIT YSTWYTH IF INTERESTED


BRDGS